## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| CASSANDRA CHIARALUCE and JONATHAN FONTAINE, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MACY'S INC, MACY'S RETAIL HOLDINGS, INC., MACY'S WEST STORES, INC. and MACYS.COM, <br><br> Defendants. | Case No.: 2:20-cv-00081 <br><br> JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiffs Cassandra Chiaraluce and Jonathan Fontaine ("Plaintiffs") bring this action on their own behalf and on behalf of putative classes (the "Classes") consisting of Plaintiffs and all others similarly situated, pursuant to the laws of the United States and Massachusetts or, in the alternative, nationwide and in all 50 States and the District of Columbia, against Macy's Inc., Macy's Retail Holdings, Inc., Macy's West Stores, Inc., and Macys.com ("Macy's" or "Defendant") and allege the following based on information and belief, except for those paragraphs pertaining to Plaintiffs' own actions, which are alleged based on personal knowledge.

### INTRODUCTION

1.     Plaintiffs bring this action on their own behalf, and on behalf of a Class consisting of Plaintiffs and all others similarly situated, to redress Defendant's deceptive acts and unconscionable business practices designed to deceive and mislead consumers and the public into believing that Defendant's bedding and linen products had higher thread counts than they actually did and, as such, were of better quality, more durable, longer-lasting, softer, and more comfortable for sleeping than products with lesser thread counts. In purchasing bedding and linen products, Plaintiffs and the Class received less than what was promised by Defendant due to the improperly inflated thread counts indicated on advertisements for and labels on bedding and linen products sold by Defendant.

2.     Members of the bedding and linen products industry, including the Defendant, and it its manufactures and distributors, including Creative Textiles and AQ Textiles,

consistently communicate to consumers that higher thread count sheets are of better quality, softer, and more comfortable for sleeping. As a result, consumers purchasing bedding and linen products use thread count as a primary indicator of the quality, durability and longevity of the sheets offered for sale and pay higher prices for higher thread counts.

3.      As part of a scheme to make their bedding and linen products more attractive, boost sales, and increase profits, Defendant and its manufactures and distributors/importers, including Creative Textiles and AQ Textiles, knowingly departed from known, well-established, and long-standing industry standards governing the calculation and advertisement of thread counts by inflating the thread counts on the labels of the products they manufactured, marketed, distributed, and/or sold.

4.      Defendant misrepresented, and continues to misrepresent, the thread count in many of the bedding and linen products it advertises, markets, and distributes throughout the country, resulting in the sale to consumers throughout the United States of bedding and linen products represented to have greater thread counts than their true thread counts. The representation of the false and misleading thread count also deceives and misleads consumers into believing that they are purchasing a product which is of higher quality, durability, longevity, and/or softness, and/or better for sleeping, than products with a lower thread count.

5.      Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality, durability, and longevity of bedding and linen products. For example, reasonable consumers believe that a bedding package with a label stating that it contains 800 thread-count bedding actually contains bedding with a thread count calculated at 800 pursuant to an honest and consistent industry standard. Likewise, consumers believe that an 800 thread-count bedding is going to be of higher quality, durability, longevity, and/or softness, and/or better for sleeping, than lower thread-count bedding. Consumers rely on Defendant's representations and advertising as they compare and assess products and make purchasing decisions.

6.      As a direct result of Defendant's improper, deceptive, and unconscionable scheme to misrepresent bedding and linen thread counts, Plaintiffs and other Class members suffered damages because the inflated thread counts that Defendant represented its products to

2

have induced Plaintiffs and other Class Members to purchase products that they would not have purchased, or would only have purchased at a lower price, had they known the products' actual thread counts at the time of purchase.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District, and has intentionally availed itself of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

9.      Defendant Macy's improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part. Defendant's decisions to engage in the improper conduct set forth herein were made in this District. Some of the bedding and linen products at issue were advertised, marketed, sold and/or distributed by Macy's, or its operating entities, in this district. Macy's or its operating entities directly advertised, marketed, and sold bedding and linen products to consumers in this district.

10.     The harm alleged herein occurred in this District or emanated from Defendant's improper conduct that occurred in this District, in whole or in part.

## FACTS

11.     Plaintiff Cassandra Chiaraluce is an adult citizen of Massachusetts.

12.     In or around October 2017, Ms. Chiaraluce purchased a Bradford Stay Fit brand queen-size sheet set, manufactured by Defendant Creative Textiles for, and distributed by, Defendant AQ Textiles and represented to be "800 Thread Count," from a Macy's retail store located at 85 Rockingham Park Blvd. in Salem, New Hampshire. This was the closest store to her

3

residence in Massachusetts.

13.     Ms. Chiaraluce relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with an 800 thread count and that the sheets were of higher quality, softer and better for sleep than sheets with lower thread counts.  However, upon information and belief, the true thread count of those sheets was in fact far less.

14.     Ms. Chiaraluce paid $69.99 for this sheet set.

15.     Plaintiff Jonathan Fontaine is an adult citizen of Massachusetts.

16.     In or around October 2017, Mr. Fontaine purchased a Fairfield Square Essex Stay Fit brand queen-size sheet set, manufactured by Defendant Creative Textiles for and distributed by Defendant AQ Textiles and represented to be "1200 Thread Count," from a Macy's retail store located at 75 Middlesex Turnpike in Burlington, MA.

17.     Mr. Fontaine relied on the thread count representations on the packaging when purchasing these sheets and believed that he was purchasing sheets with a 1200 thread count and that the sheets were of higher quality, softer and better for sleep than sheets with lower thread counts.  However, upon information and belief, the true thread count of those sheets was in fact far less.

18.     Mr. Fontaine paid $84.99 ($79.99 plus tax) for this sheet set.

19.     Defendants Macy's Inc.'s, Macy's Retail Holdings, Inc.'s, Macy's West Stores, Inc.'s, and Macys.com's principal places of business are located at 7 West 7th Street, Cincinnati, Ohio 45202. These entities operate retails stores where Plaintiffs purchased their sheets. Macy's Inc., a holding company, is a Delaware corporation, with its principal executive offices located at 7 West 7th Street, Cincinnati, Ohio 45202. Prior to June 1, 2007, Macy's Inc. was known as Federated Department Stores, Inc. As of April 2, 2016, Macy's was operating 870 stores in 45 states, the District of Columbia, Guam and Puerto Rico under the names of Macy's, Macy's Backstage, Bloomingdale's, Bloomingdale's Outlets, and Bluemercury. Macy's also made sales throughout the United States via its consumer websites: www.macys.com; bloomingdales.com; and bluemercury.com. In Macy's Annual Report for the fiscal year ending January 30, 2016, Macy's reported net sales of $27,079,000,000, of which 16% ($4,332,640,000) was identified as

4

Home/Miscellaneous sales, which presumably includes sales of bedding and linen products.[1]

20.    Defendant Macy's sells bedding and linen products bearing at least the following brand names:

>    AQ Textiles
>    Bar III
>    Betsey Johnson
>    Bluebellgray
>    Brookstone
>    Calvin Klein
>    Carter's
>    Charter Club
>    Donna Karan
>    Echo
>    Elite Home
>    Fairfield Square Collection
>    Hotel Collection
>    Hugo Boss
>    Jay Franco
>    Jessica Sanders
>    JLA Home
>    Joy Mangano
>    Lacoste Home
>    Martex
>    Martha Stewart Collection
>    Nautica
>    NoJo
>    Pendleton
>    Ralph Lauren
>    Shavel
>    Sunham
>    Tommy Bahama Home
>    Tommy Hilfiger
>    Trina Turk
>    Waterford
>    Westpoint
>    Westport

See www.macys.com.

21.    Creative Textiles is a private limited company organized under the laws of the Republic of India, with its primary place of business at 212, Cama Industrial Estate, Sun Mill Compound, Mumbai, Maharashtra 400013, India.

22.    AQ Textiles is a North Carolina LLC with it principal place of business and

---

[1] The other categories are Women's Accessories, Intimate Apparel, Shoes and Cosmetics; Woman's Apparel; and Men's and Children's.

registered offices located at 214 Staunton Drive, Greensboro, North Carolina 27410.

23.     Creative Textiles manufactures and sells textiles, including the relevant sheets and bedding products, throughout the United States through its subsidiary AQ Textiles.

24.     AQ Textiles, on behalf of Creative Textiles, imports and distributes the relevant sheet and bedding products to Defendant Macy's.[3]

25.     Defendant Macy's sold the relevant sheets and bedding products manufactured and distributed by Creative Textiles and AQ Textiles in Ohio, Massachusetts, and throughout the United States during the relevant time period.

26.     For consumers purchasing bedding and linens, thread count is used as an indicator of fabric quality, durability and longevity and a basis on which they make purchasing decisions. As the thread count increases, so does the price that consumers are willing to pay for bedding and linens.

27.     Industry participants at each level of the supply chain, including Defendant, and its manufacturers and distributors/importers, know that consumers will pay higher prices for linens and bedding products with higher thread counts and, as such, they increase the price of products as the thread counts on thoseh products increase. This includes manufacturers such as Creative Textiles, distributors/importers such as AQ Textiles, and retailers such as Defendant Macy's.

28.     Consumers rely on represented thread count as the gauge for the quality, durability, longevity, and fitness for their bedding and linen products. *See* ABC News, Are Shoppers Short-Sheeted by Thread Count? November 14, 2016, *available at http://abcnews.go.com/GMA/ story?id=125380&page=1* ("Consumers who enjoy slipping under top-quality bed sheets rely on thread count as a gauge while shopping….").

29.     Consumers pay more for higher thread count sheets. *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set.").

30.     An informal survey of the prices of cotton, king-size bedding sets at online retailers in December 2016 showed that as thread count increased, so did the price for the bedding.



31.     The common or standard practice in the U.S. bedding and linen industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction). Common or standard practice counts each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn.

32.     The American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775- 12, covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric. Section 9.1.1 of D3775-12 provides the following instruction  on the appropriate method for determining thread count: "Count individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."

33.     The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03. *See* Section 3, Terminology of ASTM D3775-123. These terms, among others, include:

> a.  **count,** *n − in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension,

and is free of folds and wrinkles.

    **b.  end,** *n − in fabric*, an individual warp yarn (single or ply) or cord.

    **c.  filling,** *n −* yarn running from selvage to selvage at right angles to the warp in a woven fabric.

    **d.  pick,** *n −* an individual filling yarn.

    **e.  pick count,** *n − in woven fabrics*, the number of filling yarns per unit fabric length.

*See* ASTM D 123-03, Standard Terminology Relating to Textiles.

34.    The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard. ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section 9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

35.    Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested, should be 5% or less. In other words, the stated thread count should be within 5% of the actual thread count.

36.    However, some bedding and linen manufacturers, importers and retailers, such as Defendant, are not adhering to the standard-based, traditional, and common industry practice. These manufacturers and retailers double or triple the true thread count by counting plied yarns individually. This includes manufacturers such as Creative Textiles, distributors/importers such as AQ Textiles, and retailers such as Defendant Macy's.

37.    According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way. This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." *See* FTC Letter to National Textile Association, August 2, 2005, Ex. A.

38.     In its Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.' A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

39.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI"). In a letter sent to the FTC on January 31, 2002, Ex. B, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> …
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.
>
> ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and misleading to describe this as a 1000 thread count product.

40.     The FTC's reply letter to ATMI, dated March 18, 2002, advised how the Commission's staff would analyze claims that counting yarns within a ply as individual yarns to

determine thread count was a deceptive practice. *See* Ex. C. The FTC advised that where ASTM standards existed, the Commission would give great weight to the applicable standards to determine if product claims were reasonable or deceptive:

> A thread count claim, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we would consider what experts in the field believe is appropriate, including whether there are relevant consensus-based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we would give such procedure or practices great weight in determining whether the advertiser has met its substantiation burden. In other related context, the Commission has encouraged the use of ASTM tests. *See* Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

41. Despite these long-standing industry standards for calculating thread counts, and the likelihood that deviating from the standards would mislead and deceive consumers, Defendant Macy's bedding and linen products were manufactured, marketed, advertised, sold, and/or distributed with inflated thread counts.

42. Defendant Macy's represented that numerous bedding and linen products were of a certain thread count, but, when measured in accordance with industry standards, these thread counts were far less than claimed because Defendant improperly counted the plies making up the threads in their linens, rather than the threads themselves. As such, Defendant Macy's knew or should have known that the advertised thread counts were false and/or misleading to consumers.

43. Creative Textiles, on information and belief, knowingly packaged and labeled its products including the relevant products sold by Defendant Macy's with inflated thread counts in order to win business or command higher prices, and either knew or should have known that the advertised thread counts were false and/or misleading.

44. AQ Textiles, on information and belief, participated in developing the labeling and packaging of the relevant products sold by Defendant Macy's with inflated thread counts, and either knew or should have known that the advertised thread counts were false and/or misleading to consumers.

45. Defendant Macy's made false representations as to the thread count of its sheets and bedding products on the website http://macys.com, as well as in all the retail Macy's stores stocked with the relevant goods. These false representations appeared in product descriptions and labels on the products' labeling and packaging.

46. Defendant Macy's representations regarding the thread counts of its sheets and bedding products were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

47. Defendant Macy's and its manufacturers and distributors/importers, including Creative textiles and AQ Textiles, knew or had reason to know that the thread counts on the sheets and bedding products at issue were false and deceptive for at least the following reason: the prices for the products, at both wholesale and retail levels, were substantially lower than the prices for authentic sheets that actually had the advertised thread counts.

48. Despite its knowledge, Defendant Macy's sold sheets and bedding products with inflated thread counts in order to obtain more business and sell more products in a competitive market.

49. Defendant Macy's, although it knew or should have known that the sheets and bedding products were labeled with inflated thread counts, repeated those misrepresentations, sold the sheets and bedding products with the help of those misrepresentations, and profited from those sales.

50. By improperly inflating thread counts in violation of industry standards, Defendant Macy's has engaged in, and continues to engage in, practices which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent to induce others to rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of bedding and linen products.

51. As a direct and proximate result of Defendant's improper conduct, Plaintiffs and Class Members paid more for bedding and linen products which Defendant represented had higher thread counts than they actually did.

52.     By representing that their products had higher thread counts than they actually did, Defendant unjustly profited from the sale of such bedding and linen products to consumers.

53.     The inflated thread counts ascribed by Defendant to their products induced Plaintiffs and other Class Members to purchase Defendant's products when Plaintiffs and other Class Members would not have purchased those products or would only have paid a lower price for the products if they had known their actual thread counts at the time of purchase.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks to represent the following classes:

**Massachusetts Class:**

All persons in Massachusetts that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Hampshire Class:**

All persons in New Hampshire that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

55.     The class period commences on the first date that Defendant Macy's marketed, advertised, sold and/or distributed the offending bedding and linen products and ending on the date that the Court certifies this suit as a class action.

56.     Excluded from the Classes are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors, agents, servants, or employees of Defendant.

57.     The Classes are so numerous that joinder of all members is impracticable. The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court.

58.     Although the Class members' identities and numbers are presently unknown, Defendant's records can readily determine this information using objective criteria. The Massachusetts and New Hampshire Classes likely consist of thousands of consumers throughout Massachusetts and New Hampshire.

59.     Additionally, or in the alternative to the Massachusetts and New Hampshire State Classes, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent a Nationwide Class and/or Classes (the "Subclasses") consisting of members from the 50 States and the District of Columbia, as well as any subclasses or issue classes that Plaintiffs may propose and/or the Court may designate at the time of class certification. The alternative Nationwide Class or state-based Classes could be defined as follows:

**Nationwide Class:**

All persons in the United States that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Alabama State Class:**

All persons in Alabama that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Alaska State Class:**

All persons in Alaska that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Arizona State Class:**

All persons in Arizona that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Arkansas State Class:**

All persons in Arkansas that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**California State Class:**

All persons in California that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Colorado State Class:**

All persons in Colorado that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Connecticut State Class:**

All persons in Connecticut that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Delaware State Class:**

All persons in Delaware that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**District of Columbia State Class:**

All persons in District of Columbia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Florida State Class:**

All persons in Florida that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Georgia State Class:**

All persons in Georgia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Hawaii State Class:**

All persons in Hawaii that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Idaho State Class:**

All persons in Idaho that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Illinois State Class:**

All persons in Illinois that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Indiana State Class:**

All persons in Indiana that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Iowa State Class:**

All persons in Iowa that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was

packaged or advertised with a representation regarding thread count.

**Kansas State Class:**

All persons in Kansas that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Kentucky State Class:**

All persons in Kentucky that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Louisiana State Class:**

All persons in Louisiana that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Maine State Class:**

All persons in Maine that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Maryland State Class:**

All persons in Maryland that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Michigan State Class:**

All persons in Michigan that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Minnesota State Class:**

All persons in Minnesota that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Mississippi State Class:**

All persons in Mississippi that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Missouri State Class:**

All persons in Missouri that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Montana State Class:**

All persons in Montana that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Nebraska State Class:**

All persons in Nebraska that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Nevada State Class:**

All persons in Nevada that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Hampshire State Class:**

All persons in New Hampshire that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Jersey State Class:**

All persons in New Jersey that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Mexico State Class:**

All persons in New Mexico that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New York State Class:**

All persons in New York that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**North Carolina State Class:**

All persons in North Carolina that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**North Dakota State Class:**

All persons in North Dakota that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Ohio State Class:**

All persons in Ohio that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Oklahoma State Class:**

All persons in Oklahoma that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Oregon State Class:**

All persons in Oregon that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Pennsylvania State Class:**

All persons in Pennsylvania that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Rhode Island State Class:**

All persons in Rhode Island that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**South Carolina State Class:**

All persons in South Carolina that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**South Dakota State Class:**

All persons in South Dakota that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Tennessee State Class:**

All persons in Tennessee that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Texas State Class:**

All persons in Texas that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Utah State Class:**

All persons in Utah that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Vermont State Class:**

All persons in Vermont that purchased bedding or linen from Defendant Macy's

that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Virginia State Class:**

All persons in Virginia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Washington State Class:**

All persons in Washington that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**West Virginia State Class:**

All persons in West Virginia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Wisconsin State Class:**

All persons in Wisconsin that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Wyoming State Class:**

All persons in Wyoming that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

60.     Plaintiffs will fairly and adequately protect the interests of the Classes and have retained as counsel attorneys experienced in class and complex litigation.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will permit an orderly and expeditious administration of the claims of the Classes, will foster economies of time, effort, and expense, and will insure uniformity of decisions. The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

62.     Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

63.     Due to the relatively small amounts of damages to each member of the Classes, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

64.     The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of these Classes.

## EQUITABLE TOLLING

65.     Despite knowing that their bedding and linen products were defective because they did not contain the qualities that Defendant advertised, specifically with regard to thread counts, Defendant concealed the products defective nature from Plaintiffs and the Class by affirmatively marketing and advertising their products as having certain qualities that they did not have.

66.     Plaintiffs and Class Members did not and could not have known that their bedding and linen did not have the qualities that they were advertised to have, as this fact was not disclosed to them and could not have been apparent from a superficial inspection of the products.

67.     Plaintiffs and Class Members could not have discovered the defective nature of Defendant's products through the exercise of due diligence.

68.     Due to Defendant's fraudulent concealment of the defects associated with their products, Defendant is estopped from asserting statute of limitations defenses to any of the claims alleged herein.

## COUNT ONE

### Breach of Express Warranty

69.      Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

70.     Defendant was put on notice of the violations of law pled above in several ways

19

including, but not necessarily limited to, prior customer complaints and correspondence sent pursuant to Mass. Gen. Laws Ann. ch. 93A by counsel for Plaintiffs to Defendant, which apprised Defendant generally of acts and omissions pled herein. The letter also advised Defendant Macy's of the breaches alleged herein. As of the date of this filing, Defendant Macy's still has not cured the breach.

71.     Representations or affirmations regarding the products' quality, characteristics, and/or longevity stated on product packaging and labeling create warranties.

72.     Defendant Macy's affirmations of fact and/or promises relating to its sheets and bedding products created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises over the expected life of the of the products.

73.     Alternatively, Defendant's representations, descriptions and specifications of the quality, durability, longevity and fitness of its sheets and bedding products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiffs and Class Members would conform to those representations, descriptions, and specifications over the expected life of the products.

74.     In fact, the sheets and bedding products purchased by Plaintiffs and the Class did not so conform to Macy's representations, descriptions, and specifications which created express warranties.

75.     Plaintiffs and the Class were the intended targets of Defendant's misrepresentations.

76.     Plaintiffs and the Class reasonably relied on Macy's misrepresentations, descriptions and specifications regarding the products' thread count, quality, durability, longevity, and fitness.

77.     Thread count determines and affects the quality, durability, longevity, and overall fitness of bedding and linen products. The higher the thread count in the bedding and linen product, the higher quality, durability, longevity, and overall fitness of those products. As thread count increases, so does the quality, durability, longevity, and overall fitness of the products. A product with a higher thread count will be of higher quality, more durable, and  longer lasting than a product

with a lower thread count.

78. As stated above, consumers rely on the represented thread counts as the gauge for the quality, durability, longevity, and fitness of their bedding and linen products. And consumers pay more for sheet and linen products with higher thread counts, reasonably believing that they are purchasing products with superior quality, durability, longevity, and fitness than products with lower thread counts.

79. As stated above, industry participants at every level of the supply chain, including Defendant Macy's, know that consumers use thread count as the gauge of quality, durability, longevity, and fitness for their bedding and linen products and will pay more for a product with a higher thread count than they will for a product with a lower thread count. Knowing that, industry participants, including Defendant Macy's, increase the prices of their products as the thread counts of those products increase.

80. Macy's expressly warrants on the labels of the sheets and bedding products that those products have certain thread counts, quality, durability, longevity, specifications, and characteristics. In fact, the products' actual thread counts are lower than what was represented, promised, and warranted and, as such, the products' quality, durability, and longevity are all less than that of comparable products that actually have those represented thread counts.

81. Plaintiffs and Class Members relied on Defendant's false representations as to the sheets and bedding products' thread counts.

82. Defendant Macy's has breached their express warranties.

83. As a result of the foregoing, the Plaintiffs and Class Members have suffered damages in that the value of the products they purchased was less than warranted by Defendant Macy's.

84. Plaintiffs and the Class were injured as a result of Defendant's breach of their express warranties about their sheets and bedding products.

85. Plaintiffs, individually and on behalf of a Nationwide Class, seek all damages permitted by law, including a full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental

21

and consequential damages, statutory attorney fees, and all other relief allowed by law.

## COUNT TWO

### Breach of Implied Warranty

86.     Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

87.     Macy's is and was at all relevant times a "merchant" with respect to the sheets and bedding products under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of the same under § 1302.01(4).

88.     The sheets and bedding products are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

89.     A warranty that the sheets and bedding products were in merchantable condition and fit for the ordinary purpose for which they are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

90.     The sheets and bedding product, when sold and thereafter, were not in merchantable condition and not fit for the ordinary purpose for which they are used.  Specifically, they lacked the quality, properties, and characteristics of high thread count sheets.

91.     Macy's was noticed of these issues within a reasonable time by multiple complaints including the instant one.

92.     As a direct and proximate result of Macy's breach of the implied warranty of merchantability, Class members have been damaged in an amount to be proven at trial.

## COUNT THREE

### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

93.     Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

94.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

95.     Defendant is  a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5) and/or (7) because it regularly sells sheets and bedding products with a written and/or implied warranty guaranteeing that its products have a certain thread count and a certain corresponding quality.

96.     Plaintiffs and other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased sheets and bedding products for personal, family, or household purposes.

97.     The sheets and bedding products are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

98.     The Act provides a cause of action for any consumer who suffers damages because of the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

99.     The amount in controversy of the Plaintiffs' individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

100.     Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

101.     Under the Act, damaged consumers have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

102.     Defendant provided Plaintiffs with the following express warranty: that the sheeting and bedding products had a certain true and accurate thread count.

103.     These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

23

104.     The sheets and bedding products' implied warranties are covered by 15 U.S.C. § 2301(7).

105.     The terms of written warranties and implied warranties became part of the basis of the bargain among Plaintiffs (and all other Class Members) and Defendant when Plaintiffs (and all other Class Members) were deciding to purchase the sheets or bedding products.

106.     Defendant breached these written and implied warranties as described in detail above.

107.     Without limitation, the sheets and bedding products had actual thread counts lower than the ones warranted and advertised.

108.     Plaintiffs and each of the other Class members have had sufficient direct dealings with Defendant Macy's to establish privity of contract.  Nonetheless, privity is not required here.

109.     Affording Defendants a reasonable opportunity to cure their breaches of warranty would be unnecessary and futile here. At the time of sale of the sheets and bedding products, Defendant knew, should have known, or were reckless in not knowing of the misrepresentations concerning the products' thread count, but nonetheless failed to rectify the situation.

110.     As a direct and proximate result of Defendant's breach of the written warranties and the implied warranty of merchantability, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

111.     Plaintiffs seek all damages permitted by law, including a full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

## COUNT FOUR
### Fraud

112.     Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

113.     Defendant designed, manufactured, marketed, and/or sold sheets and  bedding products with falsely inflated thread counts to Plaintiffs and the Class. Defendant represented to

24

Plaintiffs and the Class in advertising, packaging, product descriptions, and other forms of communication, including standard and uniform material, that the sheets and bedding products had higher thread counts than their true thread counts.

114.    Defendant were aware of or should have been aware of the falsity of these representations.

115.    Plaintiffs and the Class reasonably relied upon Defendant's deception. Plaintiffs and the Class had no way of knowing that Defendant's representations were false and/or misleading, and contrary to long-standing industry standards. As consumers, Plaintiffs and the Class did not and could not unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiffs and the Class by concealing the true facts about the products' thread counts.

116.    Defendant's representations were material to consumers because the representations were directly relevant to the value and quality of the products.

117.    Plaintiffs, individually and on behalf of the Class, seeks all damages permitted by law, including full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, punitive damages, attorney fees, and all other relief allowed by law.

## COUNT FIVE

### Violation of the Massachusetts Consumer Protection Law
### Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*

118.    Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

119.    Defendant engaged in "unfair methods of competition and unfair or deceptive acts or practices" under the Massachusetts Consumer Protection Law when they marketed, sold, or distributed sheets and linens in Massachusetts that contained less thread counts than advertised. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

120.    During the Class Period, Defendant's unlawful conduct had a substantial effect on

Massachusetts commerce.

121.     Defendant's unlawful conduct had the following effects: Plaintiffs relied on misrepresentations; Plaintiffs and Class members overpaid for the sheet and linens; and Defendant made sales based on false representations.

122.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury.

123.     Defendant has engaged in unfair and deceptive acts or practices in violation of Mass. Gen. Laws Ann. ch. 93A, § 2.

124.     Plaintiffs are entitled under Mass. Gen. Laws Ann. ch. 93A, § 11 to bring a civil action to remedy Defendant's violations and collect treble damages.

125.     Accordingly, Plaintiffs and Class members seek all relief available under Mass. Gen. Laws Ann. ch. 93A, § 11, including treble damages and attorneys' fees.

126.     Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

127.     Defendants     have     failed     to     cure     Plaintiffs'     concerns.


**COUNT SIX**

**Violation of the New Hampshire Consumer Protection Act**

**N.H. Rev. Stat. Ann. § 358-A:1, *et seq.***


128.     Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

129.     Defendant engaged in "unfair method[s] of competition [and] unfair or deceptive act[s] or practice[s]" under the New Hampshire Consumer Protection Act when they marketed, sold, or distributed sheets and linens in New Hampshire that contained less thread counts than advertised. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

130. During the Class Period, Defendant's unlawful conduct had a substantial effect on New Hampshire commerce.

131. Defendant's unlawful conduct had the following effects: Plaintiffs relied on misrepresentations; Plaintiffs and Class members overpaid for the sheet and linens; and Defendant made sales based on false representations.

132. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury.

133. Defendant has engaged in unfair and deceptive acts or practices in violation of N.H. Rev. Stat. Ann. § 358-A:2.

134. Plaintiffs are entitled under N.H. Rev. Stat. Ann. § 358-A:10 and 11 to bring a civil action to remedy Defendants' violations and collect treble damages.

135. Accordingly, Plaintiffs and Class members seek all relief available under N.H. Rev. Stat. Ann. § 358-A:10 and 11, including treble damages and attorneys' fees.

136. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

137. Defendants have failed to cure Plaintiffs' concerns.


## COUNT SEVEN

### Unjust Enrichment

138. Plaintiffs repeat and reallege all  paragraphs set forth above as if fully set forth herein.

139. As Plaintiffs and the Class show just grounds for recovering money to pay for benefits Defendant received from them, they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

140. Plaintiffs and members of the Class conferred a benefit upon Defendant by purchasing bedding and linen products with an inflated thread count that was false and misleading.

141.    Defendant had knowledge that this benefit was conferred upon it.

142.    Defendant, having received such benefits, is required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendant to retain such monies based on the illegal conduct described above.

143.    Such money or property belongs in good conscience to Plaintiffs and the Class members and can be traced to funds or property in Defendant's possession.

144.    Plaintiffs and Class members have unjustly enriched Defendants through payments and the resulting profits enjoyed by Defendant as a direct result of such payments. Plaintiffs' and Class members' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

145.    Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class members, who, without knowledge that the bedding products and linens had inflated thread counts that were false and not accurate and that the bedding and linen products would not perform as advertised, paid a higher price for the products than those products were worth.

146.    Defendant also received monies for the bedding and linen products that Plaintiffs and the proposed Class members purchased, but would not have purchased had they known the truth about the thread counts and the quality and characteristics of the bedding and linen products in question.

147.    It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

148.    Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

149.    An entity that has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the circumstances alleged herein, it would be inequitable for Defendant to retain such benefits without paying restitution or damages therefor. Defendant should not be permitted to retain the benefits

conferred via payments to be received from and/or paid by Plaintiffs and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable as a matter of right.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Class Members pray that the Court enter judgment for them and against Defendant as follows:

a.   Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

b.   Declaring that Defendant's acts and practices, as described herein, constitute deceptive acts and unconscionable business practices under consumer statutes and common law.

c.   Awarding Plaintiffs and the Class permanent injunctive relief prohibiting, restraining, and enjoining defendant from engaging in the conduct complained of herein, including, but not limited to, manufacturing, marketing, advertising, selling, and distributing bedding and linen products that have inflated thread counts;

d.   Directing Defendant to disgorge profits from its misleading and deceptive practices and to pay restitution to the Class;

e.   Awarding Plaintiffs and the Class actual, compensatory damages in an amount to be proven;

f.   Awarding Plaintiffs and the Class restitution of all monies paid to Defendant as a result of unlawful, deceptive, and unfair business practices;

g.   Awarding Plaintiffs and the Class exemplary damages in an amount to be proven;

h.   Ordering Defendant to issue corrective advertising;

i.   Awarding Plaintiffs and the Class reasonable attorneys' fees, experts witness fees, pre- and post-judgment interest, and other costs in amounts to be determined by the

Court; and

j.      Granting any other further legal or equitable relief as this Court deems appropriate.

> s/ Drew Legando               
> Drew Legando (0084209)
> MERRIMAN LEGANDO
> WILLIAMS & KLANG, LLC
> 1360 West 9th Street, Suite 200
> Cleveland, OH 44113
> Phone: 216-522-9000
> drew@merrimanlegal.com
>
> Bruce  Steckler
> Stuart  Cochran
> Kirstine Rogers
> STECKLER GRESHAM COCHRAN
> 12720 Hillcrest Road, Suite 1045
> Dallas, TX 75230
> Phone: 972-387-4040
> bruce@stecklerlaw.com
> stuart@stecklerlaw.com
> krogers@stecklerlaw.com
>
> Erica Mirabella
> MIRABELLA LAW LLC
> 132 Boylston St. 5th Floor
> Boston, MA 02116
> Telephone: (855) 505-5342
> erica@mirabellallc.com
>
> Charles LaDuca
> Brendan Thompson
> CUNEO GILBERT & LADUCA LLP
> 4725 Wisconsin Avenue, NW
> Suite 200
> Washington, DC 20016
> Telephone: (202)789-3960
> Facsimile: (202) 789-1813
> charles@cuneolaw.com
>
> Michael McShane
> Clint Woods
> AUDET & PARTNERS, LLP
> 711 Van Ness Avenue
> Suite 500
> San Francisco, CA 94102
> Telephone: (415) 568-2555

Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiffs*